Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000512
30-OCT-2013
09:56 AM

NO. CAAP-12-0000512

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

ALOHA SPORTS INC., a Hawaiʻi corporation,
Plaintiff-Appellant,
v.
THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,
Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 06-1-1832)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Leonard and Reifurth, JJ.)

Plaintiff-Appellant Aloha Sports, Inc. (Aloha) appeals from the (1) "Order Granting In Part And Denying In Part The National Athletic Association's Motion To Dismiss Plaintiff's Second Amended Complaint With Prejudice" entered February 26, 2008;[1] (2) "Final Judgment" entered January 12, 2012; (3) "Order Denying Plaintiff Aloha Sports Inc.'s Motion to Vacate Final Judgment and for New Trial, Filed January 23, 2012" entered May 8, 2012; and (4) June 19, 2012 "Order Granting In Part And Denying In Part The National Collegiate Athletic Association's

---

[1]  The Honorable Karen S. S. Ahn presided.

Motion For Fees And Costs Filed January 13, 2012" all entered in the Circuit Court of the First Circuit[2] (circuit court).

The circuit court entered judgment in favor of Defendant-Appellee The National Collegiate Athletic Association (NCAA) and against Aloha consistent with the jury verdict finding for the NCAA and interlocutory orders granted throughout the proceedings.

On appeal Aloha contends the circuit court erred when it:

(1) dismissed part of Aloha's claim brought under Hawaii Revised Statutes (HRS) § 480-2 (1993) (unfair competition claim) on the grounds that it was barred by res judicata;

(2) dismissed part of Aloha's unfair competition claim after finding Aloha lacked standing;

(3) dismissed part of Aloha's unfair competition claim after finding it lacked a factual basis;

(4) admitted testimony from a NCAA witness despite objection for impermissible conclusion;

(5) denied Aloha's motion for new trial under Hawaiʻi Rules of Civil Procedure (HRCP) Rule 60(b) and HRCP Rule 59, concluding that the newly submitted evidence would only serve to impeach or contradict a witness; and

(6) awarded an excessive amount of attorneys' fees and lacked jurisdiction to enter such award.

## I.   BACKGROUND

Aloha is a Hawaiʻi corporation and former bowl-sponsoring agency that produced NCAA Division 1-A post-season football bowl games.  The NCAA is an unincorporated voluntary association of approximately 1,200 colleges, universities, athletic conferences, and sports organizations that runs all business aspects of college sports, including certification of post-season football bowl games.

_____

[2]  The Honorable Karl K. Sakamoto presided over the proceedings that resulted in the aforementioned second, third and fourth orders, and entered the judgment.

All NCAA affiliated post-season football bowl games must be certified by the NCAA. To become certified, the bowl-sponsoring agency must meet requirements set forth in the "NCAA Postseason Football Handbook" (Handbook) released annually by the NCAA. Before 2003, the Handbook required bowl-sponsoring agencies, as a condition for certification, to agree to pay the greater of 75% of gross receipts or $750,000 to teams competing in the bowl game (Minimum Payout).

Aloha owned and operated the Aloha Bowl as an NCAA-certified post-season football bowl game from 1982 to 2002. Aloha established the Oahu Bowl in 1998 as a double-header package with the Aloha Bowl. To generate more revenue, Aloha moved the Aloha Bowl to San Francisco, changed the name to the San Francisco Bowl and scheduled the game for December 30, 2001. Aloha also moved the Oahu Bowl to Seattle, changed the name to the Seattle Bowl, and scheduled that game for January 2, 2002.

The NCAA withdrew certification of the Aloha Bowl/San Francisco Bowl before the December 30, 2001 scheduled game. Aloha produced the Oahu Bowl/Seattle Bowl for the 2001 and 2002 seasons. Aloha entered into an agreement to transfer control of Aloha to Pro Sports Entertainment, Inc. (Pro Sports) that was terminated after the NCAA denied the Seattle Bowl's 2003 certification, citing substandard game conditions and failure to meet Handbook requirements, including the Minimum Payout obligation.

On March 25, 2004, Aloha filed a complaint in the United States District Court for the District of Hawaii[3] (federal court). The parties engaged in extensive discovery. On June 1, 2004, Aloha filed the "First Amended Complaint for Treble Damages for Violations of: (1) Sherman Antitrust Act, 15 U.S.C. § 15; (2) Hawaii Unfair Trade Practices Law; (3) Breach of Contract; and (4) Intentional Interference With Contract and/or Prospective Economic Advantage" (Federal Complaint) in federal court.

---

[3] The Honorable David Alan Ezra presided.

On June 9, 2006, Aloha filed a motion to voluntarily dismiss the federal antitrust claim with prejudice and dismiss the Hawai'i state law claim without prejudice. On July 5, 2006, the federal court entered the "Order Provisionally Granting [Aloha's] Motion to Voluntarily Dismiss Its First Cause of Action With Prejudice and Its Remaining Causes of Action Without Prejudice" (July Order), and on September 22, 2006 entered the "Order Dismissing [Aloha's] First Cause of Action (Violation of Sherman Act Section 1) With Prejudice and Its Remaining Causes of Action Without Prejudice."

Aloha filed its complaint in the circuit court on October 20, 2006; its "First Amended Complaint" on November 28, 2006; and its "Second Amended Complaint" on June 12, 2007. Aloha's Second Amended Complaint brought claims against the NCAA for: (1) unfair competition; (2) "Interference With Prospective Economic Advantage"; (3) "Breach of Contract - Seattle Bowl" and, (4) "Breach of Contract - Aloha Bowl."

On August 15, 2007, the NCAA filed a motion to dismiss Aloha's Second Amended Complaint With Prejudice. In the "Order Granting in Part and Denying in Part the [NCAA's] Motion to Dismiss [Aloha's] Second Amended Complaint with Prejudice" entered February 26, 2008, the circuit court took judicial notice of the Federal Complaint and the July Order.

On May 27, 2011, Aloha filed its "Third Amended Complaint", dropping the claim against the NCAA for breach of contract regarding the Aloha Bowl. At the hearing held September 8, 2011, Aloha voluntarily dismissed with prejudice its remaining claims against the NCAA for unfair competition and for breach of contract regarding the Seattle Bowl. The only remaining unresolved claim was for interference with prospective economic advantage. On September 19, 2011 a jury returned a unanimous verdict, finding Aloha did not prove its claim by a preponderance of evidence.

On January 12, 2012, the circuit court entered a "Final Judgment" in favor of the NCAA. On January 23, 2012, Aloha filed

4

a motion to vacate the final judgment and for a new trial. On January 31, 2012, the NCAA filed a motion for attorneys' fees and costs. On May 8, 2012, the circuit court entered an order denying Aloha's motion to vacate final judgment. On May 23, 2012, Aloha filed its notice of appeal. On June 19, 2012, the circuit court entered an order granting in part and denying in part the NCAA's motion for fees and costs (order granting fees).

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

A trial court's grant or denial of a motion to dismiss for "lack of subject matter jurisdiction is a question of law, reviewable *de novo*." Norris v. Hawaiian Airlines, Inc., 74 Haw. 235, 239, 842 P.2d 634, 637 (1992), *aff'd*, Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 114 S. Ct. 2239 (1994). Norris adopted the view of the Ninth Circuit Court of Appeals in Love v. United States, 871 F.2d 1488, 1491 (9th Cir. 1989), *opinion amended on other grounds and superseded by* Love v. United States, 915 F.2d 1242 (9th Cir. 1989), that:

> review of a motion to dismiss for lack of subject matter jurisdiction is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff. Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Norris, 74 Haw. at 240, 842 P.2d at 637 (internal quotation marks, citation, and brackets omitted.) "However, when considering a motion to dismiss pursuant to [HRCP] Rule 12(b)(1) the trial court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." Norris, 74 Haw. at 240, 842 P.2d at 637 (internal quotation marks, citation, and brackets in original omitted; bracketed material added).

### B. Admission of Lay Opinion Testimony

"In Hawaii, admission of opinion evidence is a matter within the discretion of the trial court, and only an abuse of

that discretion can result in reversal." State v. Tucker, 10 Haw. App. 73, 89, 861 P.2d 37, 46 (1993) (reviewing for abuse of discretion evidence admitted pursuant to Hawaii Rules of Evidence (HRE) Rule 701).

### C. Motion for New Trial

Under HRCP Rule 59(a) and Rule 60(b) "[b]oth the grant and the denial of a motion for new trial is within the trial court's discretion, and we will not reverse that decision absent a clear abuse of discretion." Kawamata Farms, Inc. v. United Agri Products, 86 Hawai'i 214, 259, 948 P.2d 1055, 1100 (1997) (internal quotation marks omitted); Citicorp Mortgage, Inc. v. Bartolome, 94 Hawai'i 422, 428, 16 P.3d 827, 833 (App. 2000) ("It is well-settled that the trial court has a very large measure of discretion in passing upon motions under Rule 60(b) . . . ." (internal quotation marks omitted)).

### III. DISCUSSION

(1) Aloha contends the circuit court erred in dismissing part of the unfair competition claim as barred by res judicata. The circuit court concluded that Aloha's claim against the NCAA for unfair competition under HRS § 480-2 was previously litigated in federal court under the Sherman Antitrust Act.

Res judicata, or claim preclusion, limits a party to one opportunity to litigate claims, preventing inconsistent results, multiplicity of suits, and promoting judicial economy and finality. Eastern Savings Bank, FSB v. Esteban, 129 Hawai'i 154, 158, 296 P.3d 1062, 1066 (2013). Res judicata prohibits a party from bringing a new action in any court between the same parties, or their privies, regarding the same subject matter as claims that were previously litigated, or might have been properly litigated, in the previous action. Id. at 159, 296 P.3d at 1067.

The preclusive effect of a prior federal adjudication on a subsequent state action is a question of federal law, and as such, federal claim preclusion law applies. Wong v. Cayetano,

111 Hawai'i 462, 477, 143 P.3d 1, 16 (2006). "In federal court, there are three elements necessary to establish res judicata: (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between the parties." Id. (internal quotation marks omitted).

For the first element, a claim in a subsequent suit is identical to a claim in a prior adjudication when the two claims arise from "the same nucleus of operative facts," even if the subsequent claim was not actually litigated in the previous suit. Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d 1064, 1077-78 (9th Cir. 2003).

In its Federal Complaint, Aloha brought an unfair competition claim against the NCAA under 15 U.S.C. § 1[4] (Sherman Act claim) alleging the NCAA:

> 23.   . . . by agreement of its member colleges and universities engaged in a combination of conspiracy to fix the minimum payout . . . to require a minimum payout of $750,000 or 75[%] of the gross revenues of the College Football Bowl Game, whichever was greater.
>
> 24.   This combination and conspiracy, organized by and through the NCAA, produced the following anticompetitive effects, among others:
>
>    a) competition in the amount, terms and conditions of payouts . . . were artificially restricted; and
>
>    b) bowl sponsoring agencies were deprived of the benefits of competition as to the amount, terms and conditions of payouts to NCAA member colleges and universities in the United States.

Aloha subsequently moved for a voluntary dismissal of this claim and the federal court granted the motion, dismissing the claim with prejudice.

---

[4]   15 U.S.C. § 1 provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal."

Aloha then brought an unfair competition claim under HRS § 480-2[5] (HRS claim) in the circuit court alleging the NCAA:

> 20.    . . . by agreement of its members colleges and universities engaged in a combination and conspiracy to fix the minimum payout amount . . . to require a minimum payout of $750,000 or 75 percent of the gross revenues of each NCAA Certified Postseason Football Bowl Game, whichever was greater.
>
> 21.    This combination and conspiracy, organized by and through the NCAA, constituted unfair methods of competition because:
>
>     (a) competition in the amount, terms and conditions of payouts . . . was artificially restricted; and
>
>     (b) NCAA bowl sponsoring agencies were deprived of the benefits of competition as to the amount, terms and conditions of payouts to NCAA member colleges and universities in the United States.

The Sherman Act claim and HRS claim both arise from the same nucleus of operative facts. These claims, as the circuit court found, were based on a conspiracy or combination to require bowl-sponsoring agencies to comply with the Minimum Payout obligation, which allegedly produced unfair methods of competition. Moreover, the applicable federal and state laws are effectively identical.[6] All claims arising from an injury must be raised in a single action or they will be barred by res judicata, even if some claims arise under state law and some arise under federal law. See Silver v. Queen's Hospital, 63 Haw. 430, 437, 629 P.2d 1116, 1122 (1981). The claims are thus identical, satisfying the first element for res judicata.

The second element for res judicata asks whether the prior adjudication was a final judgment on the merits. The

---

    [5]    HRS § 480-2(a) provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

    [6]    HRS § 480-2(b) specifies that interpretation of § 480-2 shall be guided by the interpretation given by the Federal Trade Commission and federal courts to Section 5(a)(1) of the Federal Trade Commission Act. HRS § 480-2(b) (2008 Repl.). "Under Section 5 of the Federal Trade Commission Act, it is an unfair method of competition to violate any other specific trade regulation statutes. Federal law also dictates that attempts to circumvent antitrust statutes are prohibited under the Act. Unfair trade practices which violate the spirit of the antitrust laws fall within the purview of the Federal Trade Commission Act." Island Tobacco Co., v. R.J. Reynolds Indus., Inc., 513 F. Supp. 726, 737 (D.C. Hawai'i 1981) (citation omitted).

federal court granted Aloha's motion to voluntarily dismiss the Sherman Act claim with prejudice. Under federal and Hawai'i law, a voluntary dismissal with prejudice constitutes a final judgment on the merits. See Concha v. London, 62 F.3d 1493, 1506 (9th Cir. 1995); Matter of Herbert M. Dowsett Trust, 7 Haw. App. 640, 645, 791 P.2d 398, 402 (1990). As such, the voluntary dismissal of Aloha's Sherman Act claim constitutes a final judgment.

The federal court's dismissal of Aloha's HRS claim without prejudice is of no consequence. The HRS claim, even if raised in state court for the first time, is barred by res judicata because it is identical to the previously adjudicated Sherman Act claim.

The third res judicata element is clearly satisfied. The parties in both federal court and circuit court actions are the same. Because the circuit court action raised identical claims that were previously adjudicated on the merits between the same parties, the circuit court did not err by finding Aloha's unfair competition claims against NCAA were barred by res judicata.

(2) Aloha contends the circuit court erred in dismissing part of its unfair competition claim against the NCAA on grounds that Aloha lacked standing. In the Second Amended Complaint, Aloha alleged the NCAA engaged in unfair competition by denying the bid to re-certify the Aloha Bowl in 2002, in violation of HRS § 480-2. Aloha failed to allege a specific date for the NCAA's decision to deny certification. Before June 28, 2002, HRS § 480-2 did not provide a private right of action for claims of unfair methods of competition.[7] Hawaii Medical Ass'n v. Hawaii Medical Service Ass'n, Inc., 113 Hawai'i 77, 107, 148 P.3d 1179, 1209 (2006). Thus, any claim brought by a person other than the Attorney General must allege unfair methods of competition after June 28, 2002.

---

[7]    HRS § 480-2 was amended to include the following language: "Any person may bring an action based on unfair methods of competition declared unlawful by this section." The approval date was June 28, 2002. 2002 Haw. Sess. Laws Act 229, § 2 at 917-18.

In this case, Aloha did not allege that the NCAA denied certification of the Aloha Bowl after June 28, 2002. Aloha alleged the NCAA withdrew certification of the Aloha Bowl before the game could be played on December 30, 2001 and then denied the application for re-certification in 2002. Therefore, the circuit court did not err in concluding Aloha had no private right of action and dismissing part of Aloha's claim for unfair competition.

(3) Aloha contends the circuit court erred in dismissing part of its claim for failing to plead sufficient facts. In the Second Amended Complaint, Aloha alleged the NCAA engaged in unfair methods of competition by refusing to permit a transfer of ownership of Aloha's NCAA certified post-season football bowl games "without good cause." The circuit court dismissed the claim "for lack of any factual basis within the Second Amended Complaint."

In its opening brief, Aloha refers to allegations that detail the impending sale and the alleged interference by the NCAA. However, those allegations are not listed within the "Unfair Competition" cause of action, but are instead included within the "Interference with Prospective Economic Advantage" cause of action which follows the unfair competition claim.

In considering a motion to dismiss, factual allegations within the complaint are deemed true and viewed in light most favorable to the plaintiff. Furthermore, he court is limited to reviewing only the contents of the complaint. Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawaiʻi 251, 266, 151 P.3d 732, 747 (2007). "Hawaii's rules of notice pleading require that a complaint set forth a short and plain statement of the claim that provides defendant with fair notice of what the plaintiff's claim is and the grounds upon which the claim rests. Pleadings must be construed liberally." Tokuhisa v. Cutter Mgmt. Co., 122 Hawaiʻi 181, 192, 223 P.3d 246, 257 (App. 2009) (internal quotation marks omitted). "A complaint should not be dismissed for failure to state a claim unless it appears beyond

10

doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief." Pavsek v. Sandvold, 127 Hawai'i 390, 402-03, 279 P.3d 55, 67-68 (App. 2012) (quoting In re Estate of Rogers, 103 Hawai'i 275, 280, 81 P.3d 1190, 1195 (2003)).

While the court must accept the allegations in the complaint as true, the court need not accept conclusory or formulaic recitations. See Pavsek, 127 Hawai'i at 403, 279 P.3d at 68. The factual allegations in a complaint need not be detailed to withstand a motion to dismiss, but they must raise the grounds for relief beyond the level of speculation. Id. The pleadings must be construed to do substantial justice, allowing the plaintiff to plead claims lacking legal precision so long as the complaint provides the defendant with adequate notice as to the claim and grounds. Tokuhisa, 122 Hawai'i at 192, 223 P.3d at 257. "[T]he Hawai'i Supreme Court has rejected the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and in turn accepted the principle that the purpose of pleading is to facilitate a proper decision on the merits." Id. (quoting Hall v. Kim, 53 Haw. 215, 221, 491 P.2d 541, 545 (1971)).

In an unfair competition claim, the plaintiff must sufficiently allege the unfair act or practice and the nature of the competition. Hawai'i Medical Ass'n, 113 Hawai'i at 111, 148 P.3d at 1213. Notice pleading required Aloha to plead facts that show the NCAA engaged in an unfair act or practice to compete with Aloha for a transaction with Pro Sports when it de-certified the Seattle Bowl.

Aloha alleged the NCAA knew about the pending sale to Pro Sports and the significance of certification to the pending transaction. Aloha further alleged the NCAA disrupted the transaction by encouraging Pro Sports to abandon the deal with Aloha and apply for a bowl game independent of Aloha. These alleged facts are sufficient to discern Aloha's claim that the NCAA employed an unfair method of de-certification to gain an

advantage in the competition with Aloha to obtain a deal with Pro Sports.

When read as a whole, Aloha's Second Amended Complaint provides a factual basis for Aloha's claim that de-certification was an unfair method of competition in the Pro Sports transaction. Reviewing the motion to dismiss in light most favorable to Aloha, and accepting all factual allegations as true, the circuit court erred in dismissing Aloha's claim for lack of factual basis.

(4) Aloha contends the circuit court erred in admitting testimony from a witness called by the NCAA over Aloha's objection. During the jury trial, the NCAA called the NCAA Post-Season Football Certification Committee Chairman Tim Curley (Curley) as a witness to testify about his involvement with the certification of the Aloha Bowl and the Oahu Bowl. During his testimony, the following exchange occurred:

> [NCAA counsel]: Did you and the committee and the staff of the NCAA treat [Plaintiff] fairly in connection with their attempt to get the San Francisco Bowl going?
>
> [Curley]: Absolutely.
>
> [NCAA counsel]: Was there ever any doubt in your mind that they got a fair shake and then some?
>
> [Curley]: No sir.
>
> [NCAA counsel]: What about with the Seattle Bowl; did you treat them fairly?
>
> [Curley]: I believe so.

Aloha objected to Curley's testimony as an "impermissible conclusion" that "invades the province of the jury." The circuit court allowed the opinion.

> Under Hawaii Rules of Evidence Rule 701 (1993)
>
> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or determination of a fact in issue.

The witness' opinion may discuss a fact at issue without invading the province of the jury where the jury has great latitude to

determine the issue.  Bachran v. Morishige, 52 Haw. 61, 68, 469 P.2d 808, 812 (1970).  Lay opinion testimony can be considered speculative when the opinion is not based on first-hand knowledge.  American Broadcasting Companies v. Kenai Air of Hawai'i, Inc., 67 Haw. 219, 230, 686 P.2d 1, 8 (1984).  Opinion testimony must not state conclusions of law, and thus invade the province of the court.  Pulawa v. GTE Hawaiian Tel, 112 Hawai'i 3, 15, 143 P.3d 1205, 1217 (2006).

The circuit court did not abuse its discretion by allowing the opinion testimony because Curley testified from first-hand knowledge of observed facts and the opinion was helpful to the jury's understanding of the committee process.  Based on his experience during the Aloha Bowl certification process, Curley opined about the committee's treatment of Aloha during the re-certification process for the Aloha/San Francisco Bowl in April 2001.  The jury had great latitude in determining whether the NCAA engaged in unfair competition.  Curley's testimony was not an impermissible conclusion and did not invade the province of the jury.

(5)  Aloha contends the circuit court abused its discretion in denying the motion for new trial because new evidence allegedly showed Curley misrepresented facts during his testimony.  At the time of Curley's testimony, Curley was the Athletic Director for Penn State.  During introductory questions posed to Curley, the following exchange occurred:

> [NCAA Counsel]:  How's Coach Paterno?
>
> [Curley]:  He's doing well, he's doing well.

Aloha's motion for a new trial was based on this exchange, where Aloha alleged Curley made a false statement that prevented Aloha from presenting its case to the jury.

In support of its motion to vacate the final judgment, Aloha offered evidence showing Curley knew Coach Paterno was not doing well due to a major scandal at Penn State.  Aloha also offered evidence of a criminal complaint against Curley for

perjury in connection with the Penn State scandal. Aloha maintained the evidence of perjury would likely change the outcome under HRCP Rule 59(a) and the statement about Paterno constituted fraud under HRCP Rule 60(b)(3). The circuit court denied the motion for new trial on the basis the new evidence was not material and controlling so as to change the outcome.

HRCP Rule 59(a) provides: "[a] new trial may be granted . . . on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the State[.]" A trial court's decision to grant or deny a motion for new trial remains undisturbed absent a clear abuse of discretion. Kawamata Farms, 86 Hawai'i at 259, 948 P.2d at 1100. A trial court may grant a motion for new trial when the newly discovered evidence: (1) was previously undiscovered despite the exercise of due diligence; (2) is admissible and credible; and (3) is "of such a material and controlling nature as will probably change the outcome and not merely cumulative or tending only to impeach or contradict a witness." Orso v. City & Cnty. of Honolulu, 56 Haw. 241, 250, 534 P.2d 489, 494 (1975) overruled on other grounds by Kahale v. City & Cnty. of Honolulu, 104 Hawai'i 341, 90.3d 233 (2004).

The Penn State scandal bore no relevance to the instant case and evidence from that scandal was neither material nor controlling in this present matter. Evidence of a criminal complaint against Curley alleging perjury in an unrelated action serves only to impeach Curley's credibility. Therefore, the circuit court did not abuse its discretion when it found the evidence submitted by Aloha failed the Orso test.

HRCP Rule 60(b)(3) provides: "the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or misconduct of an adverse party[.]" Fraud is "that which seriously affects the integrity of the normal process of

14

adjudication" and includes bribery of judges and jury tampering. Moyle v. Y & Y Hyup Shin, Corp., 118 Hawai'i 385, 403, 191 P.3d 1062, 1080 (2008) (internal quotation marks omitted). To prevail on a motion under HRCP Rule 60(b)(3), the movant must: "(1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct, and (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense." Kawamata Farms, Inc., 86 Hawai'i at 255, 948 P.2d at 1096 (brackets omitted) (quoting Jones v. Aero/Chem Corp., 921 F.2d 875, 878-79 (9th Cir. 1990)).

Aloha attempts to characterize Curley's statement that Paterno "is doing well" as a fraudulent misrepresentation since Curley knew the potential impact of the Penn State scandal on Paterno. Aloha failed to show how this statement constitutes a misrepresentation used to obtain a judgment. Nor did Aloha successfully demonstrate how the statement interfered with Aloha's ability to present its case to the jury. Even if the statement were to be construed as perjury, perjury alone does not constitute fraud under HRCP Rule 60(b)(3). Cvitanovich-Dubie v. Dubie, 125 Hawai'i 128, 145, 254 P.3d 439, 456 (2011); See Moyle, 118 Hawai'i at 403, 191 P.3d at 1080. Therefore, the circuit court did not abuse its discretion in denying Aloha's motion for new trial.

(6) Aloha contends the circuit court lacked jurisdiction to enter an award of attorneys' fees. Aloha provided no argument for this alleged error and "[p]oints not argued may be deemed waived." Hawai'i Rules of Appellate Procedure Rule 28(b)(7). However, based on our review of the record we conclude the circuit court lacked jurisdiction to enter the award for attorneys' fees.

"While a case is on appeal, the lower court lacks jurisdiction to decide any questions pertaining to attorney fees arising out of or relating to the matter on appeal." Wong v. Wong, 87 Hawai'i 475, 486, 960 P.2d 145, 156 (App. 1998). Aloha

15

filed its notice of appeal on May 23, 2012. The circuit court entered its order granting fees on June 19, 2012.

## IV. CONCLUSION

Accordingly, (1) the part of the "Order Granting in Part and Denying in Part the National Collegiate Athletic Association's Motion to Dismiss Plaintiff's Second Amended Complaint With Prejudice" entered February 26, 2008, granting dismissal of Aloha's claim for unfair competition as lacking factual basis is vacated with all remaining parts of the order affirmed; (2) the "Final Judgment" entered January 12, 2012 is vacated; (3) the "Order Denying Plaintiff Aloha Sports Inc.'s Motion to Vacate Final Judgment and for New Trial" entered May 8, 2012 is affirmed; and (4) the June 19, 2012 "Order Granting In Part And Denying In Part The National Collegiate Athletic Association's Motion For Fees And Costs Filed January 13, 2012" is vacated.

DATED: Honolulu, Hawaiʻi, October 30, 2013.

On the briefs:

Frederick W. Rohlfing, III
for Plaintiff-Appellant.

William C. McCorriston
Kenneth J. Mansfield
Jordon J. Kimura
(McCorriston Miller Mukai
MacKinnon)
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge

16